1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   GARY M. MCLAUGHLIN (SBN 217832)
2  JONATHAN P. SLOWIK (SBN 287635)
   gmclaughlin@akingump.com
3  jpslowik@akingump.com
   2029 Century Park East, Suite 2400
4  Los Angeles, CA 90067
   Telephone:   310-229-1000
5  Facsimile:   310-229-1001

6  Attorneys for Defendant
   SUPERVALU INC.
7

8

9

10                UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  ALICE JONES, individually and on behalf of those similarly situated<br><br>14<br>15                              Plaintiff,<br>16         v.<br>17  SUPERVALU INC., ALBERTSON'S STORES and DOES 1 through 50 inclusive,<br>18<br>19                          Defendants.<br>20<br>21<br>22<br>23 | Case No.<br><br>**CLASS ACTION**<br><br>**SUPERVALU INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332(a), 1332(d)(2), 1441, 1446, AND 1453**<br><br>[Declarations of Christopher Irmscher, Stuart McFarland, and Gary McLaughlin, Notice of Interested Parties, Notice of Related Cases, and Civil Cover Sheet filed concurrently]<br><br>Date Action Filed:  June 27, 2014<br><br>(*Los Angeles County Superior Court, No. BC550284*) |

24

25

26

27

28

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant Supervalu Inc. ("Supervalu") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1331, 1332(a), 1332(d)(2), 1441, 1446, and 1453.  In support thereof, Supervalu states as follows:

## BACKGROUND

1.      On June 27, 2014, an action was commenced and is currently pending against Supervalu in the Superior Court of California, County of Los Angeles, as Case No. BC550284, entitled *Alice Jones, individually and on behalf of those similarly situated, Plaintiff, v. Supervalu Inc., Albertson's Stores and Does 1 through 50 inclusive, Defendants*.  On July 25, 2014, Supervalu was served with the complaint.  *See* Declaration of Gary McLaughlin in Support of Supervalu's Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1331, 1332(a), 1332(d)(2), 1441, 1446, and 1453 ("McLaughlin Decl.") ¶ 2.  Attached as Exhibit A to the McLaughlin Declaration is a true copy of the Notice of Service of Process, Summons, Complaint, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Notice of Case Assignment, Voluntary Efficient Litigation Stipulations, Court Order Regarding Newly Filed Class Action, and Initial Status Conference Order.  *See* McLaughlin Decl. ¶ 2 & Ex. A.  Attached as Exhibit B to the McLaughlin Declaration is a true copy of the Proof of Service of Summons, served on August 12, 2014.  *See id.* ¶ 3 & Ex. B.  Attached as Exhibit C to the McLaughlin Declaration is a true copy of Supervalu's Answer to Complaint, filed in Los Angeles County Superior Court on August 18, 2014.  *See id.* ¶ 4 & Ex. C.  There have been no further proceedings in this action and no other pleadings have been filed and served upon Jones or Supervalu.  *See id.* ¶ 5.

2.      Plaintiff Alice Jones is a former nonexempt pharmacist who worked in California.  *See* Complaint ¶ 7.  Jones asserts claims under the California Labor Code for failure to pay minimum and overtime wages, unfair competition, failure to timely

pay final wages, failure to provide accurate wage statements, and failure to provide reimbursement for business expenses. *See id.* ¶¶ 26-66. She purports to bring these claims on behalf of a putative class that includes all current and former non-exempt pharmacists employed by Supervalu in a particular alleged district in California since November 19, 2008. *Id.* ¶ 9.

3.     In addition to Supervalu, Jones erroneously sues "Albertson's Stores," an entity that does not exist. *See* Irmscher Decl. ¶ 16. This nonexistent entity should be disregarded for jurisdictional purposes. *See Taylor v. CoxCom, Inc.*, NO. CV 12-10149-CJC(JPRx), 2013 WL 327728, at *1 & n.1 (C.D. Cal. Jan. 29, 2013) (disregarding two erroneously sued and nonexistent entities upon removal).

4.     The Complaint and Summons were served on July 25, 2014. *See* McLaughlin Decl. ¶ 2 & Ex. C. Supervalu's Notice of Removal is timely because it is filed within thirty (30) days of that service. *See* 28 U.S.C. § 1446(b).

## DIVERSITY JURISDICTION UNDER THE
## CLASS ACTION FAIRNESS ACT

5.     Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), this Court has original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest). *See* 28 U.S.C. §§ 1332(d)(2), (d)(5), and (d)(6).[1] These requirements are satisfied here.

---

[1] Although Jones alleges that her individual damages are under $75,000 (Complaint ¶ 2), this allegation bears no significance to this analysis because the $75,000 threshold is not applicable to a removal under CAFA. *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010).

6. <u>Class Size.</u>  The putative class includes "[a]ll current and former non-exempt[] pharmacists employed by Defendants in California" since November 19, 2008. Complaint ¶ 9.  Supervalu did not itself employ any pharmacists in California during that period; rather, three of its (now former) subsidiaries did, prior to March 22, 2013. *See* Irmscher Decl. ¶ 2.  Therefore, Jones must be alleging that Supervalu is somehow liable for the claims of its former subsidiaries' pharmacists under some theory, whether as a joint employer or otherwise.  Furthermore, since Jones does not attempt to limit the class to pharmacists of any one subsidiary, the class on its face includes pharmacists employed by any of Supervalu's subsidiaries.

7. This interpretation is especially reasonable, considering that this is precisely the theory being advanced in the related action *Hoang, et al. v. Supervalu Inc., et al.*, Case No. 2:12-cv-10946-DSF-JEM (C.D. Cal.).  *See* McLaughlin Decl. ¶ 6, Ex. E (Order at 1) (*Hoang* plaintiffs "assert that Supervalu, Inc. and American Drug Stores, LLC were 'joint employers,' and that Supervalu, Inc. controlled the employees of its subsidiaries," American Drug Stores LLC, New Albertson's, Inc., and American Stores Company).  Jones references the *Hoang* action in her complaint repeatedly, and specifically argues that it tolls her class claims.  *See* Complaint ¶¶ 7, 9, 27, 34, 43, 57. Additionally, Jones's complaint is nearly word-for-word identical to the original complaint filed in *Hoang*, and Jones is represented by the same attorneys as the *Hoang* plaintiffs.  McLaughlin Decl. ¶ 5 & Ex. D.  In light of these similarities, the only reasonable conclusion is that Jones is purporting to assert claims on behalf of a class of California pharmacists employed by any of Supervalu's former subsidiaries.

8. Jones defines her proposed class as the pharmacists employed in the "Kwan Tram District."  Complaint ¶ 9.  "Kwan Tram" appears to be a reference to Quang Tran, a former pharmacy district manager in California.  Irmscher Decl. ¶ 4. Thus, while this is not the name of an actual "district," and the exact class definition is vague, she appears to be describing pharmacists employed by Supervalu's former subsidiaries in California who worked at a certain group of stores/pharmacies under the

SUPERVALU INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C. §§ 1331, 1332(a), 1332(d)(2), 1441, 1446, AND 1453

1  supervision of a single pharmacy district manager at a time.  Such a class would include
2  more than 100 individuals.

3        9.      At any given time between November 19, 2008 and March 22, 2013, the
4  pharmacists employed by Supervalu's subsidiaries in California were each under the
5  supervision of a pharmacy district manager.[2]  Irmscher Decl. ¶ 3.  Each pharmacy
6  district manager consistently had at least approximately 35 stores and 84 pharmacists
7  under his or her supervision at a time during that time period (including both full-time
8  and part-time pharmacists).  *Id.*  This includes two pharmacists regularly assigned to
9  each store, plus additional unassigned pharmacists who worked at various stores, or
10 approximately 2.4 pharmacists per store on average.  *Id.*  Additionally, 130 pharmacists
11 in California—or an average of 37 per district—separated from their employment with
12 Supervalu's subsidiaries during the class period as defined by Jones.[3]  *Id.* ¶ 6.  The
13 putative class therefore includes approximately 84 employees who were current
14 employees as of March 22, 2013 and 37 employees who separated between
15 November 19, 2008 and March 22, 2013, for a total of 121 individuals.

16        10.     Diversity of Citizenship.  "[U]nder CAFA, complete diversity is not
17 required; 'minimal diversity' suffices."  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018,
18 1021 (9th Cir. 2007).  Minimal diversity exists if any class member is a citizen of a state
19 different from any defendant.  28 U.S.C. § 1332(d)(2).

20        11.     The putative class members include citizens of the State of California.
21 Jones currently resides in California, and worked and resided in California at all times

22
23 _____
24      [2] A defendant may make the requisite showing by setting forth facts in the notice
   of removal or by affidavit.  *See Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 1029,
   1032 (N.D. Cal. 2004).
25      [3] The annual turnover rate among pharmacists in California between
26 November 19, 2008 and March 21, 2013 was an average of at least 10 percent, so an
   average of at least 8.4 pharmacists terminated per district per year ($84 \times 10\% = 8.4$
   pharmacists).  Irmscher Decl. ¶ 6.  Since there were 226 weeks, or 4.35 years, between
27 November 19, 2008 and March 21, 2013, an average of at least 37 pharmacists per
   pharmacy district separated from their employment during that period (4.35 years × 8.4
28 pharmacists = 36.54 pharmacists).

SUPERVALU INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO
28 U.S.C. §§ 1331, 1332(a), 1332(d)(2), 1441, 1446, AND 1453

relevant to the complaint.  *See* Complaint ¶ 7.  On this basis alone, the Court should find that she is a California citizen.  *See Albrecht v. Lund*, 845 F.2d 193, 194-95 (9th Cir. 1988) (finding citizenship requirement satisfied where complaint contained allegations consistent with diversity and plaintiff failed to contest the petition for removal); *Adams v. Matrixx Initiatives, Inc.*, No. CV-09-1529-PHX-FJM, 2009 WL 313459, at *2 (D. Ariz. Sept. 25, 2009) (denying remand motion and finding diversity of citizenship because plaintiff pled diverse residency and produced no evidence of non-diverse citizenship).

12.   During her employment with Supervalu subsidiary New Albertson's, Inc., Jones also maintained a California residential address on file with the company and worked at a retail store in Rancho Santa Margarita, California, further demonstrating her California citizenship.  *See* Irmscher Decl. ¶ 10; *Lam Research Corp. v. Deshmukh*, 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California); *Bey v. SolarWorld Indus. Am., Inc.*, No. 3:11-cv-1555-SI, 2012 WL 6692203, at *2 (D. Or. Dec. 26, 2012) (residential address provided by employee to employer is prima facie evidence of state citizenship).

13.   Further, Jones seeks to represent a class consisting of current and former non-exempt pharmacists employed in California.  Complaint ¶ 9.  This putative class logically includes other California citizens as well.

14.   Supervalu is not a citizen of the State of California.  Rather, Supervalu is a citizen of Delaware and Minnesota.  "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. . . ."  28 U.S.C. § 1332(c)(1). Supervalu is not incorporated in California.  Rather, at the time this action was commenced, Supervalu was and is a corporation organized and incorporated under the laws of the State of Delaware.  *See* McFarland Decl. ¶ 2.  Nor is California the state in

1    which Supervalu has its principal place of business.  Rather, as shown below,

2    Supervalu's principal place of business is located in the State of Minnesota.

3        15.    A corporation's principal place of business is determined under the "nerve

4    center" test.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Under this test, the

5    principal place of business is the state where "a corporation's officers direct, control,

6    and coordinate the corporation's activities."  *Id*.  A corporation's nerve center is a

7    "single place" and "should normally be the place where the corporation maintains its

8    headquarters."  *Id*. at 93.  Relevant factors include where executives reside and maintain

9    offices, where administrative and financial offices are located, and where day-to-day

10   control over the company is executed.  *See*, *e.g.*, *Tomblin v. XLNT Veterinary Care, Inc.*,

11   No. 09cv1940 BTM (JMA), 2010 WL 2757311, at *4 (S.D. Cal. July 12, 2010).

12       16.    Under these criteria, Supervalu's principal place of business is in

13   Minnesota.  McFarland Decl. ¶ 3  Supervalu maintains its corporate headquarters in

14   Eden Prairie, Minnesota.  *Id*.  A majority of the officers of Supervalu are located and

15   maintain their offices in Minnesota, from which they oversee and direct its

16   companywide functions.  *Id*.  Supervalu does not maintain any corporate offices in

17   California, and none of its officers or executives maintain their offices in California.  *Id*.

18       17.    Accordingly, this action involves citizens of different states—Jones, who is

19   a citizen of California (and seeks to represent a class including California citizens), and

20   Supervalu, which is a citizen of Delaware and Minnesota.

21       18.    Amount in Controversy.  Supervalu avers, for purposes of this Notice only,

22   that Jones's claims place more than $5 million in controversy.  The Ninth Circuit has

23   instructed that under CAFA, removal is proper if, from the allegations of the Complaint

24   and the Notice of Removal, it is more likely than not that the amount in controversy

25   exceeds $5 million.  *Rodriguez v. AT&T Mobility Servs., Inc.*, 728 F.3d 975, 981 (9th

26   Cir. 2013) (overturning previous Ninth Circuit precedent requiring proof of amount in

27   controversy to a "legal certainty" under some circumstances).  This standard is satisfied

28   here.

19.     For her Second Cause of Action, Jones alleges that Supervalu owes wages to putative class members because it failed to pay pharmacists at overtime rates for time worked in excess of eight hours in a workday.  *See* Complaint ¶¶ 39-40 ("Defendants required Plaintiff and Class members to work overtime without receiving overtime compensation for any hours worked over eight per day").  She alleges that Supervalu's failure to pay wages due, including overtime wages, was "uniform" and "systematic," and that this failure was so complete that it formed "[a] basis for Defendants' profitability[.]"  *See id.* ¶¶ 3, 11, 21-25.  Thus, under this theory, all putative class members may be owed daily overtime wages for any hours worked over eight in a workday between November 19, 2008 and March 22, 2013.  *See id.* ¶ 40 ("Defendants violated the provisions of §[] 510 . . . and [are] liable to Plaintiff and the Class").  *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (court may assume maximum damages consistent with plaintiff's allegations for purposes of amount in controversy).

20.     Between November 19, 2008 and March 22, 2013, the large majority of Supervalu's subsidiaries' pharmacists worked pursuant to alternative work schedules ("AWS") that included 40 hours per week over four shifts.  Irmscher Decl. ¶ 9.  At any given time, 70 percent or more of all the pharmacists in California worked full-time pursuant to a 12-hour AWS, meaning they worked three shifts each week that were 12 hours in length, or alternated between working three 12-hour shifts and two 12-hour shifts each week.  *Id.*  Although Supervalu denies that these pharmacists are owed any overtime, or that the AWSs were not properly implemented, based on how Jones has pled her complaint, this would amount to 4 hours of overtime worked per 12-hour shift, and an average of at least 10 hours of overtime worked per week by each 12-hour pharmacist (*i.e.*, 12 hours of daily overtime one week, and 8 hours of daily overtime the next week).

21.     At any given time between November 19, 2008 and March 22, 2013, approximately 84 members of the putative class were currently employed by Supervalu

7

1  subsidiaries in California.  *Id.* ¶ 3.  An average of at least 59 of these were 12-hour

2  pharmacists (70% × 84 = 58.8).  Thus, based on how Jones has pled her complaint, the

3  putative class is seeking premium wages for an average of at least 590 hours of overtime

4  per week during that period.

5      22.  All of the non-exempt pharmacists employed by Supervalu's subsidiaries

6  earned at least $54.50 per hour between November 19, 2008 and March 1, 2010.  *Id.* ¶ 7.

7  The overtime rate for these individuals was 1.5 times that amount, or at least $81.75 per

8  hour.  *See* Cal. Lab. Code § 510(a) (overtime must "be compensated at the rate of no

9  less than one and one-half times the regular rate of pay").  Because Jones alleges that

10  Supervalu failed to pay overtime wages "for any hours worked over eight per day,"

11  under this theory, these pharmacists would be entitled (at a minimum) to the difference

12  between the overtime rate and the "straight time" rate, or $27.25, for each overtime

13  hour.  *See* Complaint ¶ 36 (claiming that the putative class members are "entitled to . . .

14  the unpaid balance of . . . overtime compensation").[4]

15      23.  Based on Jones's theory, the putative class is seeking more than $16,000 in

16  unpaid overtime for each workweek between November 19, 2008 and March 1, 2010

17  ($27.25 per overtime hour × 590 overtime hours = $16,077.50).  Since there were 67

18  workweeks during that period, this claim places more than $1,077,192 in controversy

19  for that period, without even considering the overtime claims of part-time pharmacists

20  or pharmacists on other schedules.[5]

21      24.  All of the non-exempt pharmacists employed by Supervalu's subsidiaries

22  earned at least $57.00 per hour between March 1, 2010 and March 22, 2013.  Irmscher

23  Decl. ¶ 8.  The overtime rate for these individuals, therefore, was at least $85.50 per

---

[4] It is unclear whether Jones's complaint is alleging that putative class members are owed the difference between the overtime and "straight time" rate, or whether no wages at all were paid for hours exceeding eight in a workday.  This Notice conservatively assumes that she seeks the difference between the two rates.

[5] For example, a pharmacist working an AWS of four weekly shifts of 10 hours each (i.e. a "10-hour pharmacist") would be working 8 hours of daily overtime per week based on Jones' allegations.  *See* Irmscher Decl. ¶ 9.

hour, and the difference between the overtime rate and the "straight time" rate was at least $28.50 per hour.  Accordingly, based on the theory alleged in Jones's complaint, the putative class is seeking nearly $17,000 in unpaid overtime for each workweek between March 1, 2010 and March 22, 2013 ($28.50 per overtime hour × 590 overtime hours = $16,815).  Since there were 159 workweeks during that period, this claim places more than $2,673,585 in controversy for that period, without considering the overtime claims of part-time pharmacists or pharmacists on other schedules.

25.     In sum, the Second Cause of Action places more than $3,750,777  in controversy ($1,077,192 + $2,673,585 = $3,750,777).

26.     For her Fourth Cause of Action, Jones alleges that Supervalu owes penalties for having failed to pay all wages upon the end of her employment, as required by Section 203 of the California Labor Code.  *See* Complaint ¶¶ 56-62.  Under Section 203, former employees whom an employer willfully denied wages may recover penalties in the amount of their daily rate of pay for a period of up to thirty days.  *See* Cal. Lab. Code § 203.  Thus, Jones alleges that the putative class members are entitled to penalties equal to 30 times their daily rate of pay.  *See* Complaint ¶ 61 ("Plaintiff and the Class who are former employees of Defendants are entitled to recover, pursuant to Cal. Lab. Code §203, continuing wages as a penalty from the due date thereof at the same rate until paid or until this action was commenced; but for no more than 30 days.").

27.     Jones alleges that all pharmacists whose employment ended since November 19, 2008 may be owed Section 203 penalties.[6]  *See* Complaint ¶ 57 ("The Class period for this cause of action is four years from the filing of the original complaint on November 19, 2012").  Approximately 37 pharmacists in the putative class

---

[6] Supervalu disputes that the limitations period for this claim can reach as far back as Jones claims.  For purposes of removal, however, Jones has placed these penalties in controversy by expressly seeking them in her Complaint.  *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

1   terminated their employment with Supervalu's subsidiaries between November 19, 2008

2   and March 22, 2013.  Irmscher Decl. ¶ 6.  Each of these individuals earned at least

3   $54.50 per hour and usually worked at least 10 hours per shift (*see id.* ¶¶ 7-9), so the

4   average daily rate of pay for each individual at termination was at least $545.

5   Accordingly, Jones's claim for section 203 penalties places at least an additional

6   $604,950 in controversy ($545/day × 30 days × 37 = $604,950).

7           28.     The Fourth Cause of Action also seeks penalties for inaccurate wage

8   statements pursuant to California Labor Code section 226.  Complaint ¶ 62.  Section

9   226 provides for penalties of at least $50 per pay period, and Jones's sweeping

10  allegations place penalties in controversy for each pay period during the relevant period.

11  *See id.* ("Plaintiff and the Class are entitled to recover" penalties of $50 "for the initial

12  pay period" and $100 "for each violation in subsequent pay period") (quoting Cal. Lab.

13  Code § 226).  Claims for Section 226 penalties have a one-year statute of limitations,

14  *see* Cal. Civ. Proc. Code § 340, and pharmacists for Supervalu's subsidiaries were paid

15  on a weekly basis during the relevant period.  Irmscher Decl. ¶ 17.  Therefore, because

16  approximately 84 pharmacists were employed by Supervalu's subsidiaries at any given

17  time, Jones's Section 226 claim seeks penalties of at least $4,200 per week during the

18  limitations period ($50 × 84 = $4,200), placing another $218,400 in controversy

19  ($4,200 × 52 = $218,400).

20          29.     For her Third Cause of Action, Jones alleges that Supervalu engaged in

21  unfair competition by, among other things, "intentional[ly]" denying "Plaintiff and Class

22  Members with their legally required meal break[.]"  *See* Complaint ¶¶ 51, 55.

23  California Labor Code section 226.7(c) provides that if an employer fails to provide a

24  proper meal break, it must pay the affected employee an additional hour of pay as a

25  premium.  Thus, Jones seeks one hour of premium pay for each meal break the putative

26  class members missed.  *See* Complaint ¶ 51 ("Plaintiff . . . seek[s] to recover by way of

27  restitution the wages owed to [the putative class] for Defendants' violations of Labor

28  Code § 226.7 and Wage Order provisions for meal periods").

30.     As detailed above, approximately 84 members of the putative class were employed by Supervalu's former subsidiaries in California at any given time during the period of November 19, 2008 and March 22, 2013, and these individuals earned at least $54.50 per hour during that time. *See* Irmscher Decl. ¶¶ 3, 7-8.  Even if, on average, the putative class members missed only one meal break per week, Jones' claims would therefore seek restitution more than $4,500 per week ($54.50 × 1 meal break × 84 = $4,578).  This assumption is conservative, given her allegations that Supervalu's failure to provide meal breaks was "intentional," and part of a "uniform policy and systematic scheme." *See* Complaint ¶¶ 3, 11, 55; *see also Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648-49 (9th Cir. 2012) (finding amount in controversy requirement satisfied based on estimate of one meal break and one rest break violation per week because plaintiff alleged that defendant "regularly and consistently" failed to provide proper breaks); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (accepting defendant's "reasonable and conservative estimate" of one missed meal break and one missed rest break per week).  Because there were 226 workweeks during the relevant period, this claim places at least an additional $1,034,628 in controversy ($4,578 × 226 = $1,034,628).

31.     In sum, Jones's claims for unpaid overtime wages ($3,750,777), Section 203 penalties ($604,950), Section 226 penalties ($218,400), and meal break premiums ($1,034,628) conservatively place more than $5.6 million in controversy, without even considering Jones's claims for unpaid minimum wages, failure to reimburse for business expenses, and liquidated damages.

32.     Moreover, this amount does not include the attorney's fees Jones seeks in connection with, *inter alia*, her overtime, Section 203, and Section 226 claims (*see* Complaint ¶ 41 & Prayer for Relief ¶¶ 3(b), 7(d) & (e)). *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees" in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Therefore, these fees

1  place an additional $1.1 million in controversy given the potential damages and

2  penalties at issue.  *See, e.g.*, *Rodriguez v. Cleansource, Inc.*, No. 14-CV-0789-L(DHB),

3  2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) (denying motion to remand where

4  defendant showed potential damages of $4.2 million because attorney's fees of 25

5  percent brought the total amount in controversy to $5.3 million); *see also Deaver v.*

6  *BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC, 2014 WL 2199645,

7  at *6 (N.D. Cal. May 27, 2014) (accounting for attorney's fees by adding 25 percent of

8  potential damages to amount in controversy); *Giannini v. Nw. Mut. Life Ins. Co.*, No. C

9  12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same); *Jasso*, 2012 WL

10  699465, at *7 (reasonable to assume attorney's fees valued at 25 percent of common

11  fund on removal).

12      33.  In short, the total monetary relief placed in controversy by the Complaint

13  exceeds $6.7 million.  Therefore, the amount in controversy requirement is satisfied.

14  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007) (remand

15  denied under preponderance of the evidence standard where defendant's conservative

16  estimates exceeded the requisite amount); *Deehan v. Amerigas Partners, L.P.*, No.

17  08cv1099 BTM (JMA), 2008 WL 4104475, at *1 (S.D. Cal. Sept. 2, 2008) (amount in

18  controversy satisfied under preponderance of the evidence standard where defendant's

19  estimated putative class size multiplied by statutory penalty for alleged violations

20  exceeded $5 million).

21      34.  Furthermore, Jones's allegations must be considered in tandem with

22  identical allegations made in a companion case, *Terry Bjelajac v. Supervalu Inc.*, Orange

23  County Superior Court Case No. 30-2014-00732660-CU-OE-CXC.  "CAFA was clearly

24  designed to prevent plaintiffs from artificially structuring their suits to avoid federal

25  jurisdiction."  *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir.

26  2008).  Indeed, among CAFA's primary purposes was to "make it harder for plaintiffs'

27  counsel to 'game the system' by trying to defeat diversity jurisdiction," and to "create

28

1   efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be

2   consolidated in a single federal court[.]"  S. Rep. No. 109-14, at 4 (2005).[7]

3          35.     Therefore, when multiple class actions make substantially identical

4   allegations against the same defendant, and "there is no colorable basis for dividing up

5   the sought-for . . . relief . . . other than to frustrate CAFA," they should be considered

6   part of the same action for determining the amount in controversy.  *Freeman*, 551 F.3d

7   at 407-10 (instructing the district court to "consider whether the aggregated cases satisfy

8   the amount in controversy requirement" where five class actions made substantially the

9   same allegations against the same defendant, each claiming $4.9 million in

10  controversy); *Proffitt v. Abbott Labs.*, No. 2:08-CV-151, 2008 WL 4401367, at *2 (E.D.

11  Tenn. Sept. 23, 2008) (denying motion to remand where plaintiff filed eleven class

12  actions against same defendant in a "deliberate attempt to circumvent the CAFA"); *see*

13  *also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) ("[A]llowing the

14  subdivision of a $100 million action into 21 just-below-$5-million state-court actions

15  . . . would squarely conflict with [CAFA's] objective.").

16         36.     In this case, it is clear that this case and the *Bjelajac* case were filed as

17  separate actions in a deliberate attempt to circumvent CAFA.  Both complaints—filed

18  just four court days apart—are near-verbatim copies of the complaint filed almost two

19  years ago against Supervalu in the *Hoang* action.  *See* McLaughlin Decl. ¶¶ 5, 7 &

20  Exs. A, D, F.  In fact, both this action and *Bjelajac* assert their claims on behalf of

21  subsets of the putative class in *Hoang*, over identical putative class periods, and the

22  plaintiffs in all three cases share the same attorneys.  *See id.*  The only significant

23  difference between this case and *Bjelajac* is that Jones and Bjelajac purport to assert

24  their claims on behalf of pharmacists from different districts.  *Compare* Complaint ¶ 9

25  *with* McLaughlin Decl. ¶ 7, Ex. F (*Bjelajac* Complaint ¶ 9).  But nothing in either

26  complaint suggests that Jones and Bjelajac are alleging that there were material

27  _____

28     [7] Supervalu will file a Notice of Removal of Action to the Central District of
    California in the *Bjelajac* case concurrently with this Notice.

differences between districts, or that there is any difference between their cases and *Hoang*, which alleged a state-wide class.

37.     Simply, Plaintiffs have not alleged any "colorable basis" for filing separate class actions covering one district apiece, except to attempt to avoid federal jurisdiction by artificially subdividing the class previously alleged in *Hoang*. *See Freeman*, 551 F.3d at 409. Therefore, the *Jones* and *Bjelajac* cases must be considered together for purposes of the amount in controversy. When the *Bjelajac* case is properly considered, it is clear that the amount in controversy exceeds $13 million, far in excess of what CAFA requires.[8] Further, the District Court has already found that the *Hoang* case places more than $5 million into controversy. *See* McLaughlin Decl. ¶ 6, Ex. E (Order dated Oct. 17, 2013) ("Defendants Supervalu, Inc. and American Drug Stores, LLC have provided damages calculations showing that the amount in controversy exceeds $5,000,000 and have met the preponderance of the evidence standard for removal.").

38.     There are no grounds that would justify this Court in declining to exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

## TRADITIONAL DIVERSITY JURISDICTION

39.     Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over suits between citizens of different states where there is more than $75,000 in controversy. Both requirements are satisfied here.

40.     <u>Diversity of Citizenship.</u> As detailed above, plaintiff Alice Jones is a citizen of California, and defendant Supervalu Inc. is a citizen of Delaware and Minnesota. Therefore, diversity of citizenship exists.

41.     <u>Amount in Controversy.</u> For purposes of this Notice only, Supervalu submits that Jones's individual claims place more than $75,000 in controversy.

---

[8] It is likewise clear that, collectively, the number of putative class members in the *Jones* and *Bjelajac* cases significantly exceeds 100 individuals.

42.     Although Jones alleges that her claims amount to less than $75,000 (*see* Complaint ¶ 2), this allegation does not end the inquiry.  While the plaintiff is the master of her complaint and can plead around federal jurisdiction, such discretion is not absolute and may be overcome by demonstrating that, in fact, the requisite amount in controversy exists.  After the Ninth Circuit's decision in *Rodriguez v. AT&T Mobility Services*, 728 F.3d 975 (9th Cir. 2013), district courts disagree about whether a removing defendant must show $75,000 by a "preponderance of the evidence" or to a "legal certainty" to remove under traditional diversity rules when the plaintiff alleges that her claims place less than $75,000 in controversy.  *Compare Cagle v. C&S Wholesale Grocers, Inc.*, No. 2:13-cv-02134-MCE-KJN, 2014 WL 651923, at *7 (E.D. Cal. Feb. 19, 2014) (preponderance of the evidence) *with Atias v. Platinum HR Mgmt., LLC*, No. CV 14-01877 MMM (FFMx), 2014 WL 3536557, at *9 & n.49 (C.D. Cal. July 16, 2014) (legal certainty).

43.     Here, the split in authority need not be resolved, because it is certain that the amount in controversy for Jones's individual claims surpasses $75,000.  Jones was employed as a pharmacist by New Albertson's, Inc. (a former Supervalu subsidiary) from March 2006 to October 18, 2012—a period which includes 197 workweeks within the limitations period Jones alleges (accounting for a seven-week leave of absence).  Irmscher Decl. ¶¶ 10-11; *see* Complaint ¶ 9.  During this time, Jones was a full-time "12-hour pharmacist," meaning she worked pursuant to an AWS as described in paragraph 20.  Irmscher Decl. ¶ 14.  Therefore, for her Second Cause of Action, Jones alleges unpaid daily overtime premium wages of at least $262.50 per week for each of 197 workweeks—an amount that totals over $53,000 ($272.50 × 197 = $53,682.50).

44.     For her Fourth Cause of Action, Jones alleges that Supervalu owes her 30 days of pay as a penalty for having failed to pay all wages upon the end of her employment, as required by Section 203 of the California Labor Code.  *See* Complaint ¶¶ 56-62; *supra* ¶¶ 26-27.  At the time of her termination on October 18, 2012, Jones earned $57.00 per hour, and generally worked an average of 10 hours per shift

15

1   (Irmscher Decl. ¶¶ 9, 12, 14), so her daily rate of pay was approximately $570.

2   Accordingly, Jones's individual claim for section 203 penalties places an additional

3   $17,000 in controversy ($570/day × 30 days = $17,100).

4          45.    For her Third Cause of Action, Jones seeks one hour of premium pay for

5   each meal break she missed.  *See* Complaint ¶ 51 ("Plaintiff . . . seek[s] to recover by

6   way of restitution the wages owed to [her] for Defendants' violations of Labor Code

7   § 226.7 and Wage Order provisions for meal periods").  As detailed above, Jones was

8   employed for 197 workweeks in the relevant period and earned at least $54.50 per hour

9   over that time.  Even if Jones missed only one meal break per week, therefore, she

10  would be seeking restitution of over $10,000 under her theory ($54.50 × 197 =

11  $10,736.50).  *See Campbell*, 471 F. App'x at 648-49 (amount in controversy

12  requirement satisfied under "legal certainty" standard based on estimate of one meal

13  break and one rest break violation per week); *Jasso*, 2012 WL 699465, at *5 (accepting

14  "reasonable and conservative estimate" of one missed meal break and one missed rest

15  break per week).

16         46.    In summary, Jones's individual claims for unpaid overtime ($53,682),

17  Section 203 penalties ($17,100) and meal break violations ($10,736) together place

18  more than $81,000 in controversy, without even considering Jones's claims for unpaid

19  minimum wages, penalties for inaccurate wage statements, failure to reimburse for

20  business expenses, liquidated damages, and attorney's fees.  This is sufficient to satisfy

21  the amount in controversy requirement under any standard.  *See Lara v. Trimac Transp*

22  *Serv. (Western) Inc*., No. CV 10-4280-GHK (JCx), 2010 WL 3119366 (C.D. Cal. Aug. 6,

23  2010) (denying motion to remand where defendant established more than $75,000 in

24  controversy, notwithstanding plaintiff's allegation to the contrary).

25                          <u>FEDERAL QUESTION JURISDICTION</u>

26         47.    Jones's overtime claim also raises a federal question because she is a union

27  member, as is more than half of her proposed class.  *See* Irmscher Decl. ¶ 15.  For these

28  union members, overtime is governed by the applicable Collective Bargaining

1    Agreement ("CBA"). *Id.* Section 301(a) of the Labor Management Relations Act

2    establishes federal jurisdiction over "[s]uits for violation of contracts between an

3    employer and a labor organization." 29 U.S.C. § 185(a). Section 301 establishes a body

4    of federal substantive labor law that completely occupies the field and preempts any

5    state law remedy that might otherwise arise out of a dispute involving the interpretation

6    of a collective bargaining agreement. *See, e.g., Associated Builders & Contractors, Inc.*

7    *v. Local 302 Int'l Bhd. of Elec. Workers*, 109 F.3d 1353, 1356 (9th Cir. 1997). State-law

8    claims that arise out of a collectively bargained relationship are thus "properly

9    recharacterized as a single Section 301 claim." *Seid v. Pacific Bell, Inc.*, 635 F. Supp.

10    906, 909 (S.D. Cal. 1985). Where Section 301 preemption applies, the case can be

11    removed based on federal question jurisdiction, even if the Complaint purports to allege

12    only state law claims. *See, e.g., Santiago v. Aramark Unif. & Career Apparel, LLC*, No.

13    C 12-04462 JSW, 2012 WL 5868954, at *2 (N.D. Cal. Nov. 19, 2012) (denying motion

14    for remand where state law overtime claim was preempted by Section 301).

15         48.    The overtime claims Jones asserts on behalf of herself and other union

16    members are preempted by Section 301. Labor Code § 510, which governs an

17    employee's right to overtime and under which Jones asserts her overtime claim, and

18    Labor Code § 511, which governs permissible alternative workweek schedules

19    ("AWS"), are entirely inapplicable to her and those putative class members. Those

20    provisions expressly do "not apply to an employee covered by a valid collective

21    bargaining agreement if the agreement expressly provides for the wages, hours of work,

22    and working conditions of the employees, and if the agreement provides premium wage

23    rates for all overtime hours worked and a regular hourly rate of pay for those employees

24    of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514;

25    Cal. Code Regs. tit. 8, § 11070(3)(I) (same).

26         49.    The applicable CBA here contains specific provisions that govern the

27    wages, hours of work, and working conditions of members of the putative class, and

28    provides premium wage rates for overtime hours worked and regular hourly rates of pay

1    in excess of the 30 percent of the state minimum wage.  *See* Irmscher Decl., Exhibit A

2    (Retail Food, Meat, Bakery, Candy and General Merchandise Agreement, March 5,

3    2007 – March 6, 2011), Appendix F, Articles 5 & 6; *id.* Exhibit B (Retail Pharmacist

4    Agreement), Articles 5 & 6; *see also* Irmscher Decl. ¶ 7-8 (all pharmacists were paid at

5    least $54.50 per hour during the relevant time period).  Adjudicating Jones's class-wide

6    overtime claims on behalf of unionized pharmacists would likewise require the

7    application and/or interpretation of these terms of the CBA, and therefore they are

8    completely preempted by Section 301.

9         50.    For example, in order to establish that the CBA meets the requirements of

10   Labor Code section 514 and exempts union members from the Labor Code's overtime

11   requirements, and to determine union pharmacists' eligibility for overtime premium pay,

12   the Court would have to apply and interpret numerous provisions of the CBA, such as

13   full and part-time pharmacist working hours (Article 5, Sections A.1 and B.1); general

14   overtime provisions (Article 5, Sections D); overtime provisions for "Extra

15   Pharmacists" (Article 5, Section C); alternative work schedule provisions allowing

16   shifts of up to 12 hours at straight-time (Article 5, Section D); requirements regarding

17   scheduling seven consecutive days in a workweek (Article 5, Section E); overtime

18   requirements for working more than seven consecutive days (Article 5, Section K);

19   overtime requirements when called in for work on designated days off (Article 5,

20   Section L); overtime requirements for part-time employees working six days in a

21   workweek (Article 5, Section P); and calculation of overtime and premium rates

22   (Article 6, Section D).

23        51.    With respect to alternate workweek schedules, the CBA provides that

24   "With written agreement by the Employer, the Union and employee, an employee may

25   work an alternative work schedule consisting of shifts of not more than twelve (12)

26   hours at straight-time."  (Article 5, Section D)  The AWS rules under the CBA differ

27   from those in the Labor Code and Wage Order.  Therefore, the Court would need to

28   apply and interpret the CBA's AWS provisions in order to determine that "the agreement

1  provides premium wage rates for all overtime hours worked" and that Section 514

2  exempts union pharmacists from the overtime and AWS requirements of the Labor

3  Code. *See, e.g., Firestone v. Southern California Gas. Co.*, 219 F.3d 1063, 1066 (9th

4  Cir. 2000) ("[W]e agree with the district court that resolution of this issue [whether

5  plaintiffs were receiving a 'premium wage rate' for overtime under the collective

6  bargaining agreement] requires interpretation of the agreement, and that the state law

7  overtime claim is therefore preempted.").

8       52.     Further, because Jones has alleged overtime claims on behalf of union

9  pharmacists (including herself), she necessarily must either be challenging whether the

10  CBA "provides premium wage rates for all overtime hours worked," and therefore

11  exempts union pharmacists from the Labor Code's overtime requirements, or be

12  asserting overtime claims under the CBA. Either way, the Court would need to interpret

13  or apply the CBA, and the different alternative work schedule procedures that apply

14  under the CBA compared to the Labor Code, to resolve such a dispute. Thus, such

15  claims are preempted by Section 301 and give rise to a federal question.

16                                    VENUE

17       53.     The United States District Court for the Central District of California is the

18  judicial district embracing the place where this action was filed by Jones and thus is

19  therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

20       WHEREFORE, Defendants request that the above action now pending against it

21  in the Superior Court of California, County of Los Angeles, be removed to this Court.

22

23  Dated: August 22, 2014              **AKIN GUMP STRAUSS HAUER &**
                                        **FELD LLP**
                                        GARY M. MCLAUGHLIN

24                                      JONATHAN P. SLOWIK

25

26                                      By
                                            Gary M. McLaughlin

27                                          Attorneys for Defendant
                                            Supervalu Inc.

28